UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAN KARKI,

        Petitioner,

Case No. 2:25-cv-13186

HONORABLE STEPHEN J. MURPHY, III

v.

KEVIN RAYCRAFT and KRISTI NOEM,

        Respondents.

_____/

**OPINION AND ORDER DISMISSING PETITION [1]
AND DENYING AS MOOT MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION [11]**

Mohan Karki, a criminal alien detained at the St. Clair County Jail, petitioned for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. In 2014, an Immigration Judge ordered Karki removed to Bhutan or Nepal. ECF No. 6-4, PageID.89. But because both countries refused to issue travel documents for Karki, he was released into the community for many years. ECF No. 1, PageID.2. On March 17, 2025, the Government of Bhutan finally issued a travel document for Karki. ECF No. 6-2, PageID.78. Immigration and Customs Enforcement (ICE) then quickly re-detained Karki on April 8, 2025 under 8 U.S.C. § 1231(a)(6). *Id.*

In his petition, Karki sought immediate release from detention and alleged that (1) his detention has been unlawfully prolonged and (2) his re-detention violated certain immigration regulations. ECF No. 1, PageID.18–21. The Government responded, ECF No. 6, and the Court held a hearing on the petition.

1

Because there is a significant likelihood that Karki will be removed to Bhutan in the reasonably foreseeable future, Karki's detention is lawful. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). And because Karki has since received more process in federal court than anything required under the immigration regulations, any procedural errors are harmless with respect to Karki's current detention. *See Surovtsev v. Noem*, No. 1:25-cv-160, 2025 WL 3264479 (N.D. Tex. Oct. 31, 2025).

For those reasons, the Court will dismiss the petition. In doing so, the Court will also dismiss the motion for temporary restraining order or preliminary injunction as moot.

## BACKGROUND

Karki was born to Bhutanese parents in a Nepalese refugee camp. ECF No. 1-1, PageID.24. In 2011, he came to the United States as a refugee. *Id.* Three years later, Karki was convicted of burglary, criminal trespass, and interference with government property. ECF No. 6-3, PageID.81. Because Karki's conviction was for an aggravated felony, an Immigration Judge ordered him to be removed from the United States. *Id.*; ECF No. 6-4, PageID.89. But neither Nepal nor Bhutan would accept Karki, so he was never deported. ECF No. 1-1, PageID.24. Instead, Karki was released on an order of supervision. *Id.*; ECF No. 6-5, PageID.91.

More than a decade later, on April 8, 2025, ICE officers detained Karki during a check-in. ECF No. 1-1, PageID.25–26. That day, Karki moved to reopen his immigration case and stay his removal. ECF No. 6-2, PageID.78. The Immigration Judge denied the motion. ECF No. 6-3, PageID.87. Karki appealed the decision and

2

moved to remand proceedings to pursue Convention Against Torture protections. But on October 27, 2025, the Board of Immigration Appeals (BIA) affirmed the Immigration Judge's decision, denied the motion to remand, and dismissed the appeal. ECF No. 12-2, PageID.144. The Government then obtained an electronic copy of a travel document for Karki issued by Bhutan that is valid until March 17, 2026. ECF No. 12-3, PageID.156. Although Karki petitioned for review of the BIA decision and moved for a stay of removal, on November 28, 2025, the Eleventh Circuit denied his motion for a stay. ECF No. 12-4, PageID.159.

Meanwhile, Karki filed habeas petitions in two Article III district courts. First, Karki petitioned for a writ of habeas corpus in the Northern District of Ohio that was denied on June 9, 2025. *Karki v. Jones*, No. 1:25-cv-281, 2025 WL 1638070, at *9 (S.D. Ohio June 9, 2025). Because Karki had been detained for fewer than six months, the district court determined that his detention was lawful and dismissed the petition. *See id.* at *8 (noting that, under *Zadvydas*, 533 U.S. at 701, "a 6-month period of detention is presumptively reasonable").

Then, on October 8, 2025, Karki filed the instant petition. ECF No. 1. By then, he had been in detention for six months and he had been transferred from the Bulter County Jail in Hamilton, Ohio to the St. Clair County Jail in Port Huron, Michigan. *Id.* at PageID.3. Because he had been detained past the presumptively reasonable period for removal and his removal was allegedly "not reasonably foreseeable," Karki sought release from custody. ECF No. 1, PageID.14. He also alleged that he had been unlawfully re-detained in violation of immigration regulations. *Id.* at PageID.19–21.

3

By the time of the second petition, Karki's travel documents had expired. *See Karki*, 2025 WL 1638070, at *9.

On November 17, 2025, the Court scheduled a hearing on the petition for December 3, 2025. ECF No. 9. The Court required the attendance of Karki at the hearing. ECF No. 10. Two days later, the Government received new travel documents from the Government of Bhutan for Karki that are valid until March 17, 2026. ECF No. 12-3, PageID.156. The next week, on November 24, 2025, the Government bought a plane ticket to Bhutan for Karki. ECF No. 12-3, PageID.156–157. The ticket was for a flight scheduled the day before the hearing—December 2, 2025. *Id.* After buying the ticket, the Government waited six days to file an "emergency motion" to vacate the Court's order requiring Karki's presence at the hearing. ECF No. 12. Minutes before that motion was filed, Karki moved for a temporary restraining order or preliminary injunction barring the Government from transferring him out of the Eastern District of Michigan prior to the hearing. ECF No. 11, PageID.107.

The Court denied the Government's motion to vacate. ECF No. 16. And it scheduled oral argument on Karki's motion for a temporary restraining order or preliminary injunction for December 3, 2025 at 3:00 p.m.—the same time as the hearing on the petition. *Id.* The Government produced Karki, and he testified at the hearing.

4

## DISCUSSION

The Court will start with Karki's prolonged detention claim, continue with his re-detention claim, and conclude with his motion for a temporary restraining order or preliminary injunction.

I.  Claim One: Prolonged Detention

Karki argued that his prolonged detention violates his due process rights under the U.S. Constitution. Although Karki's detention under 8 U.S.C. § 1231(a)(6) for longer than six months requires heightened judicial scrutiny, it is nevertheless lawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because the Court finds that there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. As a result, the Government can lawfully detain Karki pending his removal from the country.

The Court has jurisdiction to hear habeas challenges to "post-removal-period detention." *Id.* at 688. The Immigration and Nationality Act (INA) defines burglary offenses with a term of imprisonment of at least one year as aggravated felonies. 8 U.S.C. § 1101(a)(43)(G). Because Karki was convicted of burglary and sentenced to one year in confinement, he thus committed an aggravated felony under the INA. ECF No. 6-3, PageID.81. And an "alien who is convicted of an aggravated felony" is removable. 8 U.S.C. § 1227(a)(2)(A)(iii).

Because of the conviction, Karki is subject to an order of removal from 2014. ECF No. 6-4, PageID.89. Normally, the Attorney General would have to remove Karki within ninety days, *i.e.*, within the "removal period." 8 U.S.C. § 1231(a)(1)(A). And

5

criminal aliens removable under § 1227(a)(2) cannot be released. 8 U.S.C. § 1231(a)(2)(A). But neither Bhutan nor Nepal would accept him, so the Government released Karki, subject to supervision. The removal period for Karki has long since passed. As a criminal alien removable under § 1227(a)(2)(A)(iii), however, Karki "may be detained beyond the removal period" or subject to supervision. 8 U.S.C. § 1231(a)(6).

Although the text of the statute appears to be discretionary, the Supreme Court has held that the statute contains an implicit time limit. *See Zadvydas*, 533 U.S. at 689. Accordingly, after the removal period passes, detention under 8 U.S.C. § 1231(a)(6) is limited "to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.*

Six months of detention under § 1231(a)(6) is presumptively reasonable. *Id.* at 701. After six months, however, different considerations apply:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* Under that test, courts have found detentions as long as two years to be lawful. *See, e.g.*, *Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020).

Here, there is a significant likelihood that Karki will be removed to Bhutan in the reasonably foreseeable future. The Government has repeatedly tried to remove

6

Karki over the past year. He was previously scheduled to be removed on June 10, 2025. *Karki*, 2025 WL 1638070, at *9. But the day before, Karki filed an emergency motion to stay his removal pending the resolution of his motion to reopen before the Board of Immigration Appeals (BIA). ECF No. 6-2, PageID.78–79. Because the BIA granted the motion to stay on June 10, the Government could not remove Karki. *Id.* at PageID.79; *see also Mulla v. Adducci*, 178 F. Supp. 3d 573, 577 (E.D. Mich. 2016) ("[M]uch of the delay has been attributable to the petitioner's own efforts at pursuing remedies to forestall or reverse the deportation order. He is entitled to follow that course, certainly, but his effort to employ that delay to establish that his detention is 'indefinite' is unconvincing.").

On October 27, 2025, the BIA denied the motion to reopen. ECF No. 12-2, PageID.144. And the Government promptly prepared to remove Karki from the country:

- November 6, 2025 – ICE submitted a request to have Karki's travel documents reissued.

- November 18, 2025 – Bhutan issued a travel document for Karki that is valid until March 17, 2026.

- November 19, 2025 – ICE received an electronic copy of the travel document.

- November 24, 2025 – ICE purchased commercial air travel for Karki's departure on December 2, 2025 to Bhutan.

7

ECF No. 12-3, PageID.156–157. Because the Court had already scheduled a hearing on the instant habeas petition for December 3, 2025, the Government was once again unable to remove Karki from the United States. ECF No. 16.

Karki has appealed the BIA's denial of his motion to reopen, and he moved to stay his removal pending that appeal. But on November 28, 2025, the Eleventh Circuit denied his motion for a stay of removal. ECF No. 12-4, PageID.159. As a result, there are no further domestic barriers to Karki's removal. And there are no international barriers because Karki's Bhutanese travel document is still valid. Given the Government's diligent attempts to effectuate Karki's removal over the past year, the Court finds that there is a significant likelihood that Karki will be removed to Bhutan in the reasonably foreseeable future. Even recognizing that "what counts as the 'reasonably foreseeable future'" shrinks the longer that Karki is detained, *Zadvydas*, 533 U.S. at 701, the Court still finds that his detention under § 1231(a)(6) is lawful. Karki's first claim fails.

II.  Claim Two: Re-Detention

Next, Karki challenged his re-detention (*i.e.*, the revocation of his order of supervision) as violative of the Fifth Amendment, 8 U.S.C. § 1231(a), 8 C.F.R. 241, and the Administrative Procedures Act. ECF No. 1, PageID.19–21. Karki's argument boils down to this: ICE needs to follow its own regulations when it revokes an order of supervision to effectuate a removal, and ICE failed to follow its own regulations by not providing Karki with proper notice of the revocation and a chance to challenge it.

8

*See id.* Thus, Karki contended that becuase ICE unlawfully revoked his supervision and detained him, the Court should order his release. *Id.* at PageID.21.

The Government made several arguments for why Karki's second claim fails: (1) the Court lacks jurisdiction to review the revocation; (2) the claim is barred by res judicata because of Karki's previous habeas petition; (3) the agency properly revoked Karki's supervision; and (4) even assuming that ICE failed to properly revoke the supervision under its regulations, any failure did not prejudice Karki. *See* ECF No. 6, PageID.65–73.

The Court agrees with the Government's final argument. Even if the Court assumes that Karki did not get proper notice and an opportunity to challenge the revocation in Spring 2025, he has since received notice and a chance to challenge the revocation that goes far beyond anything required by the regulations. Any past error by ICE did not prejudice Karki, and he is not entitled to relief.

To begin, the Court will explain the law and regulations surrounding revocation of supervision. Then, the Court will explain why Karki was not prejudiced by any alleged failure by ICE to strictly comply with the regulations.

A. *Legal and Regulatory Framework*

The Government has discretion to detain or release criminal aliens like Karki. *See* 8 U.S.C. § 1231(a)(6) (providing that such aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision"). When an alien is released on supervision, removal orders do not disappear. The

9

statute explicitly provides that release is provided "pending removal." 8 U.S.C. § 1231(a)(3).

The Government also has the power to revoke release to enforce a removal order. 8 C.F.R. § 241.4(*l*)(2)(iii). Karki argued that ICE failed to comply with two provisions of regulations that govern revocation of supervision and subsequent re-detention. *See* ECF No. 1, PageID17 (citing 8 C.F.R. §§ 241.4 and 241.13). On Karki's reading, ICE was required but failed to provide "notice of the reasons for revocation and a prompt interview to respond." *Id.* 8 C.F.R. § 241.4 governs the continued detention of criminal aliens beyond the removal period, and 8 C.F.R. § 241.13 governs determinations about whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future.

First, § 241.4(*l*)(2)(iii) provides that "[r]elease may be revoked in the exercise of discretion when, in the opinion of the revoking official . . . [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien." Aliens are entitled to a "review process" that includes a records review and an interview. 8 C.F.R. § 241.4(*l*)(3). That process includes "a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* But the Government does not need to provide the review process until *after* it revokes release. For example, the regulation contemplates that the interview "will ordinarily be expected to occur within approximately three months after release is revoked." *Id.*

10

Second, § 241.13(i)(2) provides that the Government "may revoke an alien's release . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." "Upon revocation", the alien gets notice "of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). No notice, however, is required before revocation. *See id.* In addition,

> The [Government] will conduct an initial informal interview promptly after [the alien's] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.

*Id.* Again, the alien is not entitled to an interview or the opportunity to submit evidence/information until *after* re-detention. *See id.*

The Government argued that § 241.13(i) does not apply. ECF No. 6, PageID.70. It argued that the statute "only applies in narrow circumstances when the agency itself has determined that a noncitizen is not likely to be removed in the reasonably foreseeable future." *Id.* True enough, § 241.13 begins with a provision entitled "Scope" and states that the section "establishes special review procedures" for aliens with a final order of removal "where the alien has provided good reason to believe there is no significant likelihood of removal." § 241.13(a). The terms of § 241.13(i), however, cover revocation of release when the Government determines that there *is* a significant likelihood of removal. *See* § 241.13(i)(2). The procedure for those revocations is detailed in § 241.13(i)(3). But if none of the provisions in § 241.13 apply

11

to aliens who *are* likely to be removed, the terms of § 241.13(i) would be superfluous. That said, even assuming that § 241.13(i) did not apply, the same core protections—notice and chance to object—would apply under § 241.4(l)(3). And the Government conceded § 241.4(l)(3)'s applicability. *See* ECF No. 6, PageID.69.

Here, Karki alleged that "ICE did not provide [him] with a revocation notice, nor has ICE conducted an initial informal interview in the six months since [he] has been re-detained as required under federal regulations." ECF No. 1, PageID.3. If Karki's averment is true, the lack of notice and a chance to object would likely violate § 241.4(*l*)(3) and, perhaps, § 241.13(i)(3).

For the current analysis, the Court thus assumes the truth of the allegations and that at least one regulation was violated. Karki did not receive a revocation notice in Spring 2025, and he has not been interviewed in the months since his re-detention. Although the contours of the interview requirement change depending on which regulation applies, the Government's failure to provide any interview (informal or otherwise) within eight months after re-detention would presumably violate both regulations.

### B. *Prejudice*

Even assuming, however, that ICE failed to provide Karki with the correct process, habeas petitioners like Karki still need to show that any error was prejudicial. For example, in the ineffective assistance of counsel context, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland v. Washington*,

12

466 U.S. 668, 692 (1984). To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Courts look to whether the outcome at trial would have been any different. If the answer is no, the petition fails. *See, e.g., Hentzen v. United States*, No. 22-5573, 2023 WL 8629076, at *9 (6th Cir. Dec. 13, 2023) (holding that, in a habeas petition challenging a child pornography conviction, the petitioner was not prejudiced by the erroneous admission of one video given the "overwhelming" weight of other evidence). Similarly, for habeas petitions under *Brady* or *Giglio*, the petitioner "must make a showing of prejudice." *See Davis v. Gross*, No. 18-5406, 2018 WL 8138536, at *2 (6th Cir. Sept. 10, 2018) (citing *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009)).

Although fewer cases discuss the prejudice requirement in the context of petitions under 28 U.S.C. § 2241, it still applies. *See Boatswain v. Martinez*, 536 F. App'x 402, 402 (5th Cir. 2013) ("The prison's 'failure to follow its own procedural regulations does not establish a violation of due process' absent some showing of resulting prejudice.") (quoting *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989)); *Corley v. Hogsten*, No. 0:11-cv-00097, 2011 WL 3809939, at *3 (E.D. Ky. Aug. 25, 2011) ("[A] § 2241 petitioner is entitled to habeas corpus relief on such a claim only where the petitioner shows resulting prejudice.") (collecting cases).

In the context of a due process challenge to a removal order, the Sixth Circuit has found that "to establish the requisite prejudice, [the alien] must show that the

13

due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Graham v. Mukasey*, 519 F.3d 546, 549–50 (6th Cir. 2008); *see also Abdulahad v. Garland*, 99 F.4th 275, 295 (6th Cir. 2024) (endorsing the "limited application of the harmless-error doctrine in the immigration context"); *Delgado-Corea v. Immigration & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986) (holding that an alien who challenged a deportation order from a judge who unquestionably violated immigration regulations still had to show prejudice).

Here, Karki alleged that he never received "a revocation notice" or an "initial informal interview." ECF No. 1, PageID.3. Those procedures exist to provide aliens with notice of why the Government is revoking release and to give them a chance to argue against the revocation. Since Spring 2025, however, Karki has gotten both notice and a chance to object to the revocation.

Consider the process of which Karki took advantage: he moved to reopen his immigration case, requested a stay of his removal in the Atlanta Immigration Court, appealed the Immigration Court's order denying the motion to reopen and the motion to stay to the Board of Immigration Appeals (BIA), filed a habeas petition in the Southern District of Ohio, filed the instant habeas petition in the Eastern District of Michigan, appealed the BIA's decision to the Eleventh Circuit, and had a hearing before an Article III judge. *See* ECF No. 6-2, PageID.78; *Karki*, 2025 WL 1638070; ECF No. 12-4, PageID.159.

To be fair, each forum did not involve identical legal issues. But throughout the past year, Karki has known that the Government revoked his release because it is and has been ready to remove him to Bhutan. *See Karki*, 2025 WL 1638070, at *8–9. Karki "has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion." *Nguyen v. Noem*, No. 6:25-cv-057, 2025 WL 2737803, at *5 (N.D. Tex. Aug. 10, 2025). Whether there was a "significant likelihood of removal" was an issue in both of Karki's petitions. *See Karki*, 2025 WL 1638070, at *8–9 (quoting *Zadvydas*, 533 U.S. at 701); ECF No. 1, PageID.4. And the Court here found that there is a significant likelihood that Karki will be removed in the reasonably foreseeable future. *Supra* Discussion, § I.

Karki also had ample opportunity to challenge the Government's decision to revoke his release. He has had the chance to obtain counsel, argue before a federal court for why his detention is unlawful, and put on evidence. But even with the extra opportunity to be heard, Karki cannot change the fact that the Government is ready, willing, and able to remove him to Bhutan. It purchased plane tickets just prior to the issuance of this order. ECF No. 12-3, PageID.156–157. And it has a travel document for him that is valid until March 17, 2026. *Id.* at PageID.156.

Finally, because the Court already found (1) that changed circumstances justify Karki's detention under 8 U.S.C. § 1231(a)(6) and (2) that there is a significant likelihood of removal in the reasonably foreseeable future, even if the Court released Karki, the Government could lawfully re-detain him the moment he was released. Again, the regulations do not guarantee pre-deprivation process. *See* 8 C.F.R.

15

§ 241.13(i)(3) ("The Service will conduct an initial informal interview promptly *after* his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.") (emphasis added); 8 C.F.R. § 241.4(*l*)(3) (providing that, if the alien is not released from custody the Government will normally "commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months *after* release is revoked") (emphasis added).

Accordingly, any deprivation of process by the Government's failure to follow its regulatory procedures is harmless and the Court cannot justify ordering Karki's release. In coming to its conclusion, the Court finds support from a string of recent cases in the Northern District of Texas. *See, e.g.*, *Surovtsev v. Noem*, No. 1:25-cv-160, 2025 WL 3264479 (N.D. Tex. Oct. 31, 2025); *Nguyen*, No. 6:25-cv-057, 2025 WL 2737803 (N.D. Tex. Aug. 10, 2025).

Although the Court is aware of cases to the contrary, it finds them unpersuasive. Karki cited *K.E.O. v. Woosley*, No. 4:25-cv-74, 2025 U.S. Dist. LEXIS 172361 (W.D. Ky. Sep. 4, 2025), for the proposition that "prejudice may be presumed when 'compliance with the regulation is mandated by the Constitution' and 'where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency.'" *Id.* at *13 (quoting *Delgado-Corea*, 804 F.2d at 263). But the district court there was quoting a Fourth Circuit opinion that itself was quoting another case. And the Fourth Circuit was quoting the case to stress that courts are *not* required to presume prejudice; they

16

"may" presume prejudice but are not required to. *See Delgado-Corea*, 804 F.2d at 263 ("While [the cited] case would allow such a presumption of prejudice in certain cases, it does not require it. The Board in the instant case correctly concluded that as a general rule prejudice must be shown by the alien."). The district court also acknowledged that, "[t]o prove an *Accardi* claim, and a violation of Due Process, the claimant must also 'demonstrate prejudice resulting from the violation.'" *K.E.O.*, 2025 U.S. Dist. LEXIS 172361, at *13 (quoting *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)).

As for the other two cases Karki cited, they do not contain any discussion of harmless error or prejudice. *See* ECF No. 8, PageID.103.[1] Finally, Karki brought a fourth case to the Court's attention at the hearing and provided it in a notice on the docket thereafter. ECF No. 17-1. The new case also does not apply a harmless error standard. *See Gamez v. Francis*, No. 25-cv-7429, 2025 WL 3263896 (S.D.N.Y. Nov. 24, 2025). And its facts are distinguishable: though the petitioner made similar allegations, she had a pending asylum application derivative of her husband and

---

[1] The cases are also distinguishable. In *Roble v. Bondi*, No. 25-cv-3196, 2025 U.S. Dist. LEXIS 164108 (D. Minn. Aug. 25, 2025), the Government "requested third country removal assistance" from an unnamed country but had not obtained travel documents. And in *Phetsadakone v. Scott*, No. 2:25-cv-01678, 2025 U.S. Dist. LEXIS 173785 (W.D. Wash. Sep. 5, 2025), the court granted a temporary restraining order after the petitioner raised concerns about third-country removal. The Court agrees that, in some cases, failure to provide proper notice can be prejudicial. For instance, if an alien does not know which country he is going to be removed to, he will not be able to make out a claim under the Convention Against Torture. Here, however, Karki knows that the Government is going to remove him to Bhutan. And the BIA concluded in October 2025 that Karki "has not shown a reasonable likelihood that he will succeed in an application for protection under the regulations implementing the Convention Against Torture." ECF No. 12-2, PageID.142–143.

17

noncitizen daughter's recently granted asylum status. *Id.* at *23. On balance, the Court finds cases like *Surovtsev* and *Nguyen* more persuasive. Karki's second claim fails.

III. Motion for Temporary Restraining Order and Preliminary Injunction

Finally, Karki moved for a temporary restraining order and preliminary injunction "to allow Mr. Karki to appear at this hearing on December 3, 2025, allow this Court to adjudicate his due process claims, and allow Mr. Karki to prepare for an orderly departure." ECF No. 11, PageID.121. Because the Court dismissed the underlying petition, the motion is moot.[2]

---

[2] Karki's arguments for why he is entitled to further "opportunity to prepare for an orderly departure," ECF No. 11, PageID.118, are also weak on the merits. First, because the language that Karki relies on does not come from a statute, regulation, or manual, the Court doubts that it can be the basis for an *Accardi* claim. Second, Karki seems to assume that the "opportunity" entitles him to prepare for removal outside of custody. The language of his "notification" is not so clear. It says: "Once a travel document is obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure." ECF No. 11-2, PageID.124. The "opportunity" could very well mean time after the alien surrenders, though the Court recognizes some ambiguity on the point. Either way, Karki was allowed to prepare for his departure: he has pursued various legal avenues within and without the immigration system, and he has had the opportunity to communicate with family through phone and video conference at the St. Clair County Jail. ECF No. 11-3, PageID.126. Though the Court understands the tragedy of family separation, it hesitates to read anything else into Karki's "opportunity," especially after many months. Finally, even assuming that ICE violated Karki's ability to prepare for an orderly departure, at least one court has found that the remedy for a violation is not release from custody. *See Doe v. Smith*, No. 18-cv-11363, 2018 WL 4696748, at *10 (D. Mass. Oct. 1, 2018). For those reasons, the Court is unpersuaded by Karki's arguments.

18

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the petition [1] is **DISMISSED**.

**IT IS FURTHER ORDERED** that the motion for a temporary restraining order or preliminary injunction [11] is **DENIED AS MOOT**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: December 8, 2025